IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FRANK MCKINNON AND
CONCERNED CITIZENS OF SOUTHEASTERN
NEW MEXICO,

      Petitioners,

v.                                              NO. 07-912 JH/LAM

DENNIS R. SPURGEON, United States Department of Energy,
Assistant Secretary for Nuclear Energy, Leader for the Global
Nuclear Energy Partnership (GNEP); TIMOTHY FRAZIER,
Associate Deputy Assistant Secretary (Acting), Office of Fuel
Cycle Managment, Office of Nuclear Energy of the US Department
of Energy; TAMMY L. WAY, GNEP PEIS Document Manager,
Corporate Communications and External Affairs, Office of Nuclear
Energy of the US Department of Energy; DALE GANDY;
LARRY GANDY; MIKE MARLEY, of Gandy Marley, Inc.;
STEVE CREAMER, President and Chief Executive Officer of
EnergySolutions, Inc.; ALLEN DODSON, General Manager,
GNEP Program, EnergySolutions, Inc.; PETER MAGGIORE,
Vice President, North Wind, Inc.; All Others Culpable in this Matter,

      Respondents.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on (i) *pro se* Petitioner Frank McKinnon's Petition for an Emergency Order of Protection or Injunction, which McKinnon filed in state court on July 13, 2007, and which the Respondents removed to this Court on September 14, 2007 (Doc. 1, Ex. A); and on (ii) McKinnon's Rebuttal of Notice of Removal, filed November 27, 2007 (Doc. 12), which the Court construes as a Motion for Remand. The Court will deny both motions.

## FACTUAL AND PROCEDURAL BACKGROUND

McKinnon contends that the Defendants are "posing threats" to him and every other resident in southeastern New Mexico by considering a location in Chaves County, New Mexico as a potential site for a nuclear waste burner reactor and nuclear waste reprocessing facility. *See* Doc. 1, Ex. A

at 5.  He contends that the way the respondents are promoting the Chaves County site deprives him and other residents of their due-process and equal-protection rights.  *Id.* at 5-6.  McKinnon apparently bases his due-process and equal-protection claims on a belief that the Defendants are promoting their project by publishing "misleading rhetoric."  *See id.* at 4 (cover letter to state district court).  He is concerned that the individuals and companies who would be the owners of the proposed facilities "have a long history of violating" undescribed laws and that no federal or state agency except for the Department of Energy ("DOE"), which he believes is incapable of managing such complex projects, has authority to inspect or oversee the proposed facilities.  *See id.* at 7.

McKinnon sought unspecified emergency injunctive relief in state district court "to stop the threats."  *Id.*  Although the petition does not mention the source of McKinnon's rights that he is seeking to protect through injunctive relief, the Court notes that the Fourteenth Amendment to the United States Constitution guarantees both the right to due process and the right to equal protection under the law and McKinnon references the Fourteenth Amendment of the United States Constitution as the source of his rights in his "Notice of Rebuttal."  *See* Doc. 12 at 2.

Defendants Mike Marley, Dale Gandy and Larry Gandy removed the action to federal court within thirty days after they were served with a copy of McKinnon's petition, citing 28 U.S.C. §1441(b) (providing that any "civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties"), 28 U.S.C. §1331 (granting federal district courts "original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States"), and 28 U.S.C. §1343 (providing federal district courts with original jurisdiction for civil actions based on claims of "deprivation of any right or privilege of a citizen of the United States" secured by the Constitution of the United States).  *See*

Doc. 1 at 4.

The Defendants admit that McKinnon's petition "addresses activities being undertaken as part of the Global Nuclear Energy Partnership ("GNEP"), . . . [which is] a comprehensive strategy to increase U.S. and global energy security, reduce the risk of nuclear nonproliferation, encourage clean development around the world, and improve the environment." *Id.* at 3 (internal quotation marks omitted). Defendants assert that "the DOE is preparing a Programmatic Environmental Impact Statement (PEIS) pursuant to the requirements of the National Environmental Policy Act (NEPA), 42 U.S.C. §4321 et seq." and that the "PEIS will consider whether to proceed with the construction and operation of nuclear fuel recycling facilities to demonstrate a closed fuel cycle, and if so, where to build and operate such facilities, and what technologies and capacities to utilize." *Id*. at 2-3 (internal quotation marks omitted). Defendants also admit that "the DOE is considering thirteen (13) potential locations for facilities planned under GNEP, including Roswell, New Mexico." *Id.* at 3. The Defendants contend that McKinnon has not satisfied his burden to establish the right to injunctive relief.

## ANALYSIS

**1. The case has been properly removed.**

The Court must first address McKinnon's challenge to removal. McKinnon does not challenge the factual or legal predicates set forth by the Defendants in their notice of removal. Instead, he argues that he has the right to continue to proceed in state court and that proceeding in federal court will "take away [his] right to appeal." *See* Doc. 12 at 2.

Because McKinnon's Petition sets forth a civil action arising under the Constitution and laws of the United States this Court has original jurisdiction over this matter pursuant to §§1331 and 1343. This action, therefore, has been properly removed pursuant to §1441 and its resolution will

proceed in this Court instead of in state district court. McKinnon may appeal this Court's final decision, should he so desire, to the Tenth Circuit Court of Appeals. *See* FED. R. APP. P. 4(a)(B) (providing for appeal as of right when the United States, its officer, or agency is a party).

### 2. McKinnon has not demonstrated entitlement to injunctive relief.

Because McKinnon's claim for injunctive relief arises under the United States Constitution and presents a federal question, the Court applies federal substantive law regarding injunctive relief.

> It goes without saying that an injunction is an equitable remedy. It is not a remedy which issues as of course or to restrain an act the injurious consequences of which are merely trifling. An injunction should issue only where the intervention of a court of equity is essential in order effectually to protect property rights against injuries otherwise irremediable. The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies.

*Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12 (1982) (internal quotation marks and citations omitted). Thus, McKinnon must show that there are no adequate legal remedies available to him in challenging the Defendants' actions of conducting the requisite NEPA evaluations and studies. He must also prove: "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007).

One of NEPA's primary purposes is to ensure that a federal agency "contemplating a major action" that could affect the environment, "in reaching its decision, will have available, and will carefully consider, detailed information concerning significant environmental impacts." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989). NEPA "also guarantees that the relevant information will be made available to the larger audience that may also play a role in both the decisionmaking process and the implementation of that decision." *Id.* The President and

Congress need information concerning the environmental effects of the agency's proposed program to assist them in deciding whether to support or overrule the agency's action. NEPA documentation and publication requirement also "gives the public the assurance that the agency has indeed considered environmental concerns in its decisionmaking process, and, perhaps more significantly, provides a springboard for public comment." *Id.* at 349 (internal quotation marks and citation omitted). Clearly, McKinnon cannot establish that conducting NEPA studies to consider (i) whether to proceed with the construction and operation of nuclear fuel recycling facilities, and if so, (ii) where to build and operate such facilities, and (iii) what technologies and capacities to utilize is illegal, and cannot establish success on the merits or irreparable harm. Indeed, the Defendants *must* utilize the NEPA process before making such decisions. *See, e.g.*, *Pub. Serv. Co. of Colo. v. Andrus*, 825 F. Supp. 1483, 1510 (D. Idaho 1993) (enjoining the "DOE from transporting, receiving, processing, or storing any additional nuclear waste of any kind, from any source, at [a location in Idaho] until it complies fully with the mandatory procedural requirements of NEPA"); *Sierra Club v. Watkins*, 808 F. Supp. 852, 876 (D.D.C. 1991) (enjoining the DOE from continuing to import spent nuclear fuel because it had not filed an adequate environmental impact statement or completed an environmental assessment that included the full range of risks and alternatives).

McKinnon has a legal remedy, which is to comment and/or participate in the administrative NEPA review process and by presenting his alleged evidence and expert witness testimony at the NEPA hearings that the proposed plants and processes are ineffective and dangerous to operate in Chaves County. No court, whether it be state or federal, may enjoin the Defendants from engaging in the evaluations and studies that federal statutes such as NEPA require before the Defendants proceed with plans to dispose of spent nuclear fuel near a river. *Compare TVA v. Hill*, 437 U.S. 153, 173 (1978) (holding that an imminent violation of the Endangered Species Act required injunctive

relief) *with Weinberger*, 456 U.S at 314-20 (noting that the District Court found that the Navy had violated the Federal Water Pollution Control Act ("FWPCA"); that the "purpose and language of [a federal] statute limit[] the remedies available to the District Court"; and that the FWPCA gave the District Court discretion to allow the Navy to temporarily continue its activities while obtaining the requisite permit).

**IT IS ORDERED** that McKinnon's Petition for an Emergency Order of Protection or Injunction (Doc. 1, Ex. A) and his Rebuttal to Notice of Removal (Doc. 12) are DENIED.

_____
**UNITED STATES DISTRICT JUDGE**